MALAMA MAKUA, a Hawai'i nonprofit corporation, Plaintiff,

v.

Donald RUMSFELD, Secretary of Defense; and Louis Caldera, Secretary of the United States Department of the Army, Defendants.

No. CIV. 00–00813 SOM–LEK.

United States District Court, D. Hawai'i.

March 1, 2001.

Paul H. Achitoff, Earthjustice Legal Defense Fund, Honolulu, HI, for plaintiff.

Ltc. David Howlett, Theodore G. Meeker, Office of Atty. Gen., Honolulu, HI, for defendants.

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS

MOLLWAY, District Judge.

## I. INTRODUCTION.

Plaintiff Malama Makua ("Malama") challenges the Supplemental Environmental Assessment for Routine Training at Makua Military Reservation and PFC Pililaàu Range Complex ("SEA") and Finding of No Significant Impact ("FONSI") issued by the United States Department of the Army ("Army") on December 12, 2000. Malama alleges that the SEA and FONSI violate the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, in concluding that the Army's proposed training activities at Makua Military Reservation ("MMR") will not cause any significant environmental impact. The Complaint therefore requests that the court: (1) require the Army to prepare an Environmental Impact Statement ("EIS") for the proposed training at MMR; and (2) enjoin any training activities at MMR pending the completion of an EIS.

The SEA and FONSI have generated discussion outside the courtroom on the parties' positions on military readiness and on environmental, cultural, and historical preservation. Those underlying issues, however, are not presently before the court. Instead, the court has before it the legal issues raised by Defendants Donald Rumsfeld [1] and Louis Caldera (collectively "Defendants") in their motion to dismiss the Complaint. Defendants argue that:

---

1. This action was originally brought against Secretary of Defense William Cohen. Donald Rumsfeld, however, recently was appointed as Secretary of Defense and is therefore substituted as the proper defendant in this case.

(1) Malama's claims are not ripe for judicial review; or, in the alternative, (2) Malama's claims are moot. The court denies Defendants' motion to dismiss because the Complaint was ripe when it was filed and because Defendants have not met their burden of showing that the withdrawal of the SEA and FONSI renders this case moot. The court stays this lawsuit pending the earlier of ninety days from the date of this order or Defendants' decision regarding the completion of a final NEPA document.

## II. *BACKGROUND FACTS.*

MMR lies approximately 38 miles northwest of Honolulu on the western shore of Oahu near Kaena Point. *See* SEA at 1, attached as Ex. B to Malama's Motion for Preliminary Injunction. The Army has used MMR since 1943 as a training area for troops from the Army, other branches of the military, and foreign nations. *See id.* The Army built a Company Combined Arms Assault Course ("CCAAC") at MMR in 1988 as part of its focus on infantry training. *See id.* For the next ten years, various military units actively conducted live fire and combined arms maneuver training at MMR. *See id.*

In September 1998, several wildland fires at MMR were started by munitions that fell outside of designated impact areas. *See id.* Defendants temporarily suspended training operations at MMR as a result. *See id.* Defendants and the United States Fish and Wildlife Service ("FWS") then held discussions pursuant to section 7 of the Endangered Species Act, 16 U.S.C. § 1536, regarding the impact on endangered species of military activities at MMR. *See* SEA at 1. No military training has taken place at MMR since September 1998. *See id.*

In response to the wildland fires, Malama notified Defendants of alleged violations of section 7 of the ESA and of its intent to sue Defendants for their alleged failure to ensure, in consultation with the FWS, that the training activities at MMR would not jeopardize the continued survival of endangered species. *See* Complaint ¶ 40. On October 9, 1998, Malama filed suit against Defendants, seeking to compel them to prepare an EIS addressing all training and training-related operations at MMR. *See* Complaint ¶ 49. The lawsuit resulted in a Stipulated Dismissal and Order pursuant to which Defendants agreed not to conduct any military training activities at MMR until thirty days after the completion of a NEPA document that addressed all activities that Defendants proposed to resume at MMR. *See* Stipulated Dismissal and Order ("Stipulated Order") at 2–3, attached as Ex. K to Malama's Memorandum in Opposition to Federal Defendants' Motion to continue Plaintiff's Motion for Preliminary Injunction.

Defendants published a Draft SEA for Routine Training at MMR and PFC Pililaàu Range Complex ("DSEA") on September 23, 2000. *See* Declaration of Colonel William R. Puttmann, Jr. ("Puttmann Dec.") ¶ 3; Complaint ¶ 50. The DSEA proposed "mitigated live-fire training at" MMR and identified five alternatives to the proposed action: (1) no action; (2) training at Pohakuloa Training Area; (3) training at facilities in the continental United States; (4) resumption of the pre-September 1998 level of training at MMR; and (5) use of MMR for training without live fire. *See* Complaint ¶ 51.

On September 25, 2000, Defendants held a community meeting to announce the availability of the DSEA and to solicit public comments and participation. *See* Puttmann Dec. ¶ 3. At the community's request, Defendants held a second community meeting on October 11, 2000. *See id.* Following the comment period on the DSEA, Defendants reviewed, considered,

responded to, and incorporated more than 130 comments received during the comment period for the DSEA into the SEA. *See id.*

On December 14, 2000, Defendants held a public meeting to announce the completion of the SEA and FONSI for routine military training at MMR. *See id.* ¶ 4. The SEA "evaluated all available data" and "determined that the implementation of the proposed action would have no significant impact on the quality of the natural or human environment." *See* FONSI at 4, attached as Ex. B to Malama's Motion for Preliminary Injunction. The FONSI concluded that "because no significant impacts would result from implementing the proposed action an [EIS] is not required and will not be prepared." *Id.* The FONSI was signed by Colonel William R. Puttmann, Jr., Commander, United States Army Garrison, Hawaii. *See id.* It was dated December 12, 2000. *See id.*

Defendants informed the public that a community meeting would be held in January 2001 to receive public comments that would be considered before the Army made a decision to resume training at MMR. *See* Puttmann Dec. ¶ 4. Defendants described the SEA and FONSI as Defendants' "initial findings and decision," and "not a final decision." *See* Statement from the public meeting held on December 14, 2000 at B 2, B 5, attached as Ex. B to Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss.

On December 15, 2000, Captain Clarence Wagner ("Captain Wagner"), an attorney for the Army, personally hand delivered a copy of the SEA and FONSI to Malama's counsel, John Fritschie ("Fritschie"). *See* Declaration of John A. Fritschie ("Fritschie Dec.") ¶ 2, attached to Plaintiff's Opposition to Defendants' Motion to Dismiss; Declaration of Captain Clarence M. Wagner, Jr. ("Wagner Dec.") ¶ 3, attached to Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss. Fritschie claims that Captain Wagner informed Fritschie that the Army believed that training could resume at MMR thirty days after the delivery of the SEA and FONSI pursuant to the terms of the Stipulated Order. *See* Fritschie Dec. ¶ 3. Captain Wagner, on the other hand, says that he did not tell Fritschie that the thirty-day clock referred to in the Stipulated Order was triggered by the delivery of the SEA and FONSI. *See* Wagner Dec. ¶ 3. Captain Wagner instead claims that he only told Fritschie that "the Army would not begin training at MMR until the comment period was over and only after all the comment provided by the public were considered and analyzed." *See id.* ¶ 4.

On December 20, 2000, Malama filed suit against Defendants, challenging the SEA and FONSI, and Defendants' corresponding decision not to prepare an EIS relating to the resumption of training at MMR. *See* Complaint ¶ 1. Malama filed a motion for preliminary injunction on December 21, 2000, seeking to enjoin the Army from resuming live-fire training at MMR pending final disposition of this action. *See* Plaintiffs' Motion for Preliminary Injunction.

Defendants moved to continue the hearing on Malama's motion for preliminary injunction on January 10, 2001. *See* Federal Defendants' Motion to Continue Plaintiffs' Motion for Preliminary Injunction. Defendants argued that the hearing should be continued because they were still receiving comments from the public regarding the SEA and FONSI and because they had not yet decided whether to resume live-fire training at MMR or to withdraw the SEA and FONSI. *See id.* at 1–4. At the hearing on Defendants' motion to continue, Defendants' counsel agreed that the issuance of the SEA and

FONSI triggered the running of the thirty-day period required by the Stipulated Order. *See* Transcript of Hearing on Federal Defendants' Motion to Continue Plaintiff's Motion for Preliminary Injunction, dated January 11, 2001, at 2:00 p.m., at 5 (counsel states, "I would say that's true" in response to the court's statement that, "in terms of what triggers the running of the thirty days, under the stipulation that you had entered in the earlier case the [FONSI] is clearly expressly such a trigger"). Defendants' counsel also informed the court that Defendants had no intention of resuming live-fire training before March 19, 2001. *See id.* The court granted Defendants' motion to continue in light of the public comment that might affect Malama's motion for preliminary injunction. *See* Order Granting Federal Defendants' Motion to Continue Plaintiff's Motion for Preliminary Injunction. The court, however, ordered Defendants to notify Malama at least two working days before they conducted any military training activities at MMR so that Malama, if necessary, could seek a temporary restraining order. *See id.*

The Army held an Open House at MMR on January 20, 2001. *See* Puttmann Dec. ¶ 5. The public was invited to the Open House and encouraged to ask questions regarding the SEA and FONSI. *See id.* Over 150 people attended this Open House. *See id.*

The Army also held a community meeting at the Waianae Community Center on January 27, 2001, to receive public comment on the SEA and FONSI. *See id.* ¶ 6. Over 500 people attended the meeting. *See id.* The Army received oral testimony from 64 individuals and written comment from an additional 677 people. *See id.*

Upon review of the public comment on the SEA and FONSI, the Army determined that at least fifteen issues raised by the public required further consideration

and might require a modification of the SEA and reconsideration of the FONSI in order to address community concerns adequately. *See id.* The Army therefore withdrew the SEA and FONSI on February 7, 2001. *See id.* Defendants have not decided whether to resume live-fire training at MMR and do not intend to conduct any military training at Makua until thirty days after a final NEPA document has been completed. *See id.* ¶ 8. Reconsideration of the SEA and FONSI will result in either a determination to prepare an EIS or issuance of the same or a revised SEA and FONSI. *See id.*

## III. STANDARD.

 Because ripeness and mootness both pertain to a federal court's subject matter jurisdiction under Article III of the United States Constitution, they are properly raised in a motion to dismiss under Fed.R.Civ.P. 12(b)(1). *See St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir. 1989) (ripeness goes to a federal court's subject matter jurisdiction); *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000) (mootness is jurisdictional). A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer subject matter jurisdiction on the court, or may attack the existence of subject matter jurisdiction in fact. *Thornhill Publ'g Co., Inc. v. General Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir.1979). When the motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Federation of African Am. Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir.1996). When the motion to dismiss is a factual attack on subject matter jurisdiction, however, no presumptive truthfulness attaches to the plaintiff's allegations, and the exis-

tence of disputed material facts will not preclude the trial court from evaluating for itself the existence of subject matter jurisdiction in fact. *Thornhill,* 594 F.2d at 733.

Defendants' motion to dismiss is a factual attack on this court's subject matter jurisdiction. Accordingly, the court may accept and evaluate evidence to determine whether jurisdiction exists. *See McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988) ("when considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction"), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); *Biotics Research Corp. v. Heckler,* 710 F.2d 1375, 1379 (9th Cir.1983) (consideration of material outside the pleadings does not convert a Rule 12(b)(1) motion into a motion for summary judgment).

 The presumption is that federal courts "lack jurisdiction unless plaintiff pleads sufficient facts to establish it." *Celli v. Shoell,* 40 F.3d 324, 328 (10th Cir.1994). Malama has the burden of proving that jurisdiction does in fact exist. *Thornhill,* 594 F.2d at 733. Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Rosenbaum v. Syntex Corp.,* 95 F.3d 922, 926 (9th Cir.1996).

## IV. ANALYSIS.

### A. Legal Framework of NEPA.

NEPA requires that an EIS be prepared for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). "Major Federal actions" subject to NEPA include "new and continuing activities" with "effects that may be major and which are potentially subject to Federal control and responsibility." 40 C.F.R. § 1508.18. The "human environment" includes "the natural and physical environment and the relationship of people with that environment." 40 C.F.R. § 1508.14. Effects that must be considered in an EIS include ecological, aesthetic, historic, cultural, economic, social, and health effects, whether direct or indirect. 40 C.F.R. § 1508.8.

If, as here, an agency's regulations do not categorically require or exclude the preparation of an EIS, the agency must first prepare an Environmental Assessment ("EA") to determine whether the action will have a significant effect on the environment. 40 C.F.R. § 1501.4. An EA is a concise public document that is less comprehensive and less detailed than an EIS. 40 C.F.R. § 1508.9. If the EA establishes that the agency's action "may have a significant effect upon the ... environment, an EIS must be prepared." *Foundation for N. Am. Wild Sheep v. United States Dep't of Agric.,* 681 F.2d 1172, 1178 (9th Cir.1982); *see also Blue Mountains Biodiversity Project v. Blackwood,* 161 F.3d 1208, 1212 (9th Cir.1998), *cert. denied,* 527 U.S. 1003, 119 S.Ct. 2337, 144 L.Ed.2d 235 (1999). If the EA indicates that the agency's action will not significantly affect the quality of the human environment, the agency must issue a FONSI. *See* 40 C.F.R. § 1508.13. The EA and FONSI must be accompanied by " 'a convincing statement of reasons' to explain why a project's impacts are insignificant." *Blue Mountains,* 161 F.3d at 1212 (quoting *Save the Yaak Comm. v. Block,* 840 F.2d 714, 717 (9th Cir.1988)). The FONSI must be made available to the public for review at least thirty days before initiation of the proposed action, unless it is excluded on a security basis. 32 C.F.R. § 651.24(c), (d).

### B. Ripeness.

#### 1. Ripeness Must Exist at the Commencement of Litigation.

 "The ripeness doctrine is designed to prevent premature judicial intervention

in uncompleted agency proceedings and to insure that challenged agency decisions have a concrete impact on the parties involved." *Friedman Bros. Inv. Co. v. Lewis,* 676 F.2d 1317, 1319 (9th Cir.1982) (citing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). Ripeness is an element of jurisdiction and is measured at the time an action is instituted; ripeness is not a moving target affected by a defendant's action. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 189–91, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (discussing the jurisdictional element of standing and noting that standing must exist at the commencement of the litigation). If ripeness existed at the commencement of this action, Defendants cannot avoid judicial scrutiny by withdrawing the SEA and FONSI and arguing that the case is no longer ripe. *See Bradley v. Work,* 916 F.Supp. 1446, 1464 (S.D.Ind. 1996) ("ripeness is determined as of the date of filing the action"); *cf. Lockary v. Kayfetz,* 917 F.2d 1150, 1153–54 (9th Cir. 1990) (ripeness in takings case determined at time suit was filed).

### 2. *Malama's Claims Were Ripe When the Complaint was Filed.*

"[T]he ripeness requirement is designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Ohio Forestry Ass'n v. Sierra Club,* 523 U.S. 726, 732–33, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) (quoting *Abbott Laboratories,* 387 U.S. at 148–49, 87 S.Ct. 1507). "Whether an issue is ripe for judicial determination depends on the combined weight of the question's fitness for adjudication and the hardship to the parties if

review is delayed." *Friedman Bros.,* 676 F.2d at 1319. Defendants argue that this case was not ripe for judicial review at the time it was filed because Defendants had not taken any final agency action at that time.

■ The Administrative Procedure Act authorizes judicial review of a final agency action for which there is no other adequate remedy in court. *See* 5 U.S.C. § 704. Agency action may be "final" if at least two conditions are satisfied. "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear,* 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (citations omitted). The issuance of the SEA and FONSI was a final agency action ripe for judicial review at the time the Complaint was filed in this suit, even if Defendants have now withdrawn that action.

### a. *The Finding of No Significant Impact Marked the Culmination of Defendants' Decisionmaking Process.*

The issuance of the SEA and FONSI marked the culmination of Defendants' decisionmaking process. The SEA and FONSI provided notice that Defendants had completed their evaluation of the environmental impact of the proposed action to resume military training at MMR. Defendants had "determined that the implementation of the proposed action would have no significant impact on the quality of the natural or human environment" and that "because no significant impacts would result from implementing the proposed action an [EIS] is not required and will not be prepared." FONSI at 4. Although Defendants had not made a final commitment

to resume training at MMR at the time this suit was filed, they had come to a final conclusion that the proposed action would have no significant environmental impact. *See Friedman Bros.*, 676 F.2d at 1319 (finding final agency action even though the agency "has not made a final commitment to fund construction of the bus depot, [because] the agency has spoken its last word on the project's environmental impact"). Defendants thus concluded the decisionmaking process regarding the proposed action's environmental impact. *See Southwest Williamson County Cmty. Ass'n, Inc. v. Slater*, 173 F.3d 1033, 1037 (6th Cir.1999) ("issuance of a FONSI is final agency action and provides notice that [the agency] has completed its evaluation of the environmental impact of the action in question").

Defendants assert that the SEA and FONSI, issued on December 12, 2000, were only preliminary or tentative decisions and were not intended to be final NEPA documents. Defendants argue that the SEA and FONSI actually were only "draft" documents that were not subject to judicial review under the Administrative Procedure Act. *See Bennett Hills Grazing Ass'n v. United States*, 600 F.2d 1308, 1309 (9th Cir.1979) (finding that a draft EIS was not a final agency action subject to judicial review). Defendants are unpersuasive.

First, the words "draft," "tentative," or "preliminary" do not appear anywhere in the SEA or FONSI to describe the findings by Defendants. The SEA and FONSI unambiguously conclude that "the implementation of the proposed action would have no significant impact on the quality of the natural or human environment" and that "because no significant impacts would result from implementing the proposed action an [EIS] is not required and will not be prepared." FONSI at 4. The language of the SEA and FONSI nowhere indicates

that Defendants' decision not to prepare an EIS is a preliminary decision. To the contrary, the SEA and FONSI clearly state that "all available data" has been evaluated and that "an [EIS] will not be prepared." *Id.* The FONSI was signed and dated by the Commander of the Army's Hawaii Garrison. *See id.* A draft only purporting to be final would not have been signed.

Second, Defendants issued a Draft SEA on September 23, 2000. *See* Puttmann Dec. ¶ 3. This September draft establishes that Defendants were quite capable of clearly noting that a document was a "draft," as opposed to a "final" NEPA document. If Defendants did not intend for the SEA and FONSI issued on December 12, 2000 to be deemed a final NEPA document subject to judicial review by the court, they could easily have issued a second "draft" SEA. Instead, Defendants signed and dated a SEA and a FONSI that for all purposes appeared to be final NEPA documents.

Third, it also appears that Defendants, at one time at least, believed that the SEA and FONSI, as final NEPA documents, gave Defendants the right to resume training at MMR. Fritschie claims that Captain Wagner informed him that the Army believed that training could resume at MMR thirty days after the delivery of the SEA and FONSI, pursuant to the terms of the Stipulated Order. *See* Fritschie Dec. ¶ 3. Although Captain Wagner denies saying those specific words to Fritschie, he does admit that he told Fritschie that "the Army would not begin training at MMR until the comment period was over[.]" *See* Wagner Dec. ¶ 4. Captain Wagner's statement suggests that the Army, even while taking in and considering public comment on the SEA and FONSI, thought that the SEA and FONSI were the final agency actions necessary for resumption of train-

ing. As noted above, at the hearing on Defendants' motion to continue, Defendants' counsel admitted that the SEA and FONSI triggered the thirty-day period required by the Stipulated Order. *See* Transcript of Hearing on Federal Defendants' Motion to Continue Plaintiff's Motion for Preliminary Injunction, dated January 11, 2001, at 2:00 p.m., at 5. While admitting that the thirty-day period was set to expire and that Defendants could resume training based on the SEA and FONSI, Defendants' counsel noted that Defendants intended to wait until this court ruled on Malama's pending motion for preliminary injunction. *See id.*

Pursuant to the Stipulated Order, Defendants could only resume training at MMR if a final NEPA document was completed. The conduct of Defendants therefore suggests that the SEA and FONSI were "final" NEPA documents pursuant to· the Stipulated Order and that Defendants could resume training at MMR thirty days after the issuance of the SEA and FONSI.

Fourth, Defendants withdrew the SEA and FONSI on February 7, 2001. If the SEA and FONSI were not "final," Defendants had no reason to "withdraw" them. If they were simply "tentative" documents, as Defendants now assert, Defendants could have just revised the drafts without withdrawing them.

Fifth, Defendants argue that the invitation to the public to comment on the SEA and FONSI indicates the tentativeness of those documents. However, the thirty-day public comment period was required by law once the final FONSI issued. *See* 32 C.F.R. § 651.24(c), (d). Defendants' solicitation of public comment therefore does not establish that the SEA and FONSI were tentative or draft NEPA documents. If compliance with public comment requirements rendered a FONSI nonfinal, no FONSI would ever be final when issued. Defendants admitted at the hearing

on the present motion that a FONSI is usually a final agency action.

Accordingly, the court concludes that the SEA and FONSI were "final" NEPA documents that ended Defendants' decisionmaking process with regards to the environmental impact of military training at MMR. Although the SEA and FONSI did not determine what action the Army would take (e.g., whether the Army would resume live-fire training), that determination is distinguishable from the determination that no significant impact will result.

b. *Significant Legal Consequences Flowed from the Issuance of the SEA and FONSI.*

The SEA and FONSI triggered significant legal consequences for both Malama and Defendants. First, under the terms of the Stipulated Order, Defendants' issuance of the SEA and FONSI authorized the resumption of training at MMR after the thirty-day period had passed. Second, Malama could now seek judicial review of the SEA and FONSI pursuant to the Administrative Procedure Act and NEPA. Malama, however, had to act within thirty days of the issuance of the SEA and FONSI or risk the resumption of training and possible damage to Malama's environmental interests. It is therefore clear that the SEA and FONSI were not· "tentative," "preliminary," or "advisory" documents. Rather, they significantly affected the parties' legal rights. The court therefore concludes that Defendants' issuance of the SEA and FONSI constituted a final agency action subject to judicial review under the Administrative Procedure Act.

As the Supreme Court has noted, "a person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." *Ohio Forestry Ass'n,* 523 U.S. at 737, 118 S.Ct. 1665.

The alleged failure to comply with NEPA occurred when Defendants issued the SEA and FONSI on December 12, 2000. This case was therefore ripe for judicial review when Malama filed this action on December 20, 2000, and ripeness is unaffected by Defendants' subsequent actions.

### C. Mootness.

In contrast to ripeness, mootness is affected by the parties' actions after suit is filed. *See Hill v. Blind Indus. & Servs. of Maryland,* 179 F.3d 754, 757 (9th Cir.1999) ("mootness is grounds to dismiss an action at any time"). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)). Defendants argue that no live controversy now exists because they have voluntarily withdrawn the SEA and FONSI, and that the case should therefore be dismissed as moot.

■ A party claiming mootness has the heavy burden of establishing that it is not conveniently stopping the complained-of activity, only to resume once a suit is dismissed. *See Laidlaw,* 528 U.S. at 189, 120 S.Ct. 693 (the burden "lies with the party asserting mootness"). Clearly dismissal in that context could expose a plaintiff to the risk of having to run to court repeatedly, only to be stymied each time as the defendant voluntarily, but temporarily, ceases its actions. *See id.* (if a defendant's voluntary cessation of an alleg-

edly unlawful practice deprived a federal court of jurisdiction over a case, "the courts would be compelled to leave the defendant free to return to his old ways").

It is precisely to avoid such a situation that the Supreme Court has held that "a defendant's voluntary cessation of a challenged practice does not deprive a court of its power to determine the legality of that practice." *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). It is true, however, that "a case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Exp. Ass'n,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968) (quotation omitted). "[T]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Laidlaw,* 528 U.S. at 189, 120 S.Ct. 693.

■ Defendants have not met the heavy burden of persuading the court that they will not resume the conduct challenged here.[2] Defendants do not contend that they will never again issue an SEA and FONSI regarding the resumption of training at MMR. Indeed, Defendants admit that their current reconsideration of the SEA and FONSI could result either in a decision to prepare an EIS, to issue a revised FONSI, or to re-issue the previous SEA and FONSI substantially unchanged. *See* Puttmann Dec. ¶ 8. Accordingly, De-

---

**2.** Defendants cite *Oregon Natural Res. Council v. Harrell,* 52 F.3d 1499, 1508 (9th Cir.1995), for the proposition that a suit is rendered moot when a final NEPA document is withdrawn by the agency. *Harrell* is inapposite to this case. In *Harrell,* the Ninth Circuit held that the plaintiff's challenge of an EIS under NEPA was rendered moot by the agency's withdrawal of the record of decision and EIS.

*See Harrell,* 52 F.3d at 1508. The withdrawal of the record of decision and EIS was ordered by the district court in *Harrell,* however, and was not voluntary, as in the present case. *See id.* The Ninth Circuit in *Harrell* therefore did not apply the voluntary cessation doctrine or the heavy burden of persuasion that lies with the party asserting mootness under the voluntary cessation doctrine. *See id.*

fendants do not show that Malama's claims have been rendered moot by Defendants' voluntary withdrawal of the SEA and FONSI on February 7, 2001. *See Doremus v. United States,* 793 F.Supp. 942, 946–48 (D.Idaho 1992) (holding that an agency's withdrawal of a decision to revoke a special use permit did not render moot an action brought by permit holders challenging the revocation decision because the agency did not meet its burden of demonstrating that it would not attempt to revoke the permit again).

### D. *Stay.*

■ A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones,* 520 U.S. 681, 706, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997). The Ninth Circuit has explained that the exercise of this power to stay calls for the exercise of sound discretion. *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir.1962). When it is proposed that a pending proceeding be stayed, the competing interests that will be affected by the granting or refusing of a stay must be weighed. Among these competing interests are the possible damage that may result from the granting of a stay, the hardship or inequity that a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law that could be expected to result from a stay. *Filtrol Corp. v. Kelleher,* 467 F.2d 242, 244 (9th Cir.1972), *cert denied,* 409 U.S. 1110, 93 S.Ct. 914, 34 L.Ed.2d 691 (1973); *CMAX,* 300 F.2d at 268.

All parties admitted at the hearing on this motion that no significant hardship or inequity will result from a stay of this case. Accordingly, the court stays this lawsuit pending the earlier of ninety days from the date of this order or Defendants' decision regarding the completion of a final NEPA document. If Defendants anticipate not making a decision by May 29, 2001, then, no later than May 15, 2001, they shall notify the court by filing a statement setting forth the status of their decisionmaking process. The court will then consider whether the stay should be extended.

### V. *CONCLUSION.*

Because the issuance of the SEA and FONSI marked the culmination of Defendants' decisionmaking process and was an action from which legal consequences flowed, Defendants' issuance of the SEA and FONSI constituted a final agency action ripe for judicial review at the commencement of this litigation under the Administrative Procedure Act. Malama's claims have not been rendered moot by Defendants' voluntary withdrawal of the SEA and FONSI on February 7, 2001 because Defendants have not met their heavy burden of persuading the court that they will not resume the conduct challenged here. Accordingly, Defendants' motion to dismiss is denied.

The court stays this lawsuit pending the earlier of ninety days from the date of this order or Defendants' decision regarding the completion of a final NEPA document. If Defendants will not be issuing a decision by May 29, 2001, they shall file a statement by May 15, 2001, setting forth the status of their decisionmaking process, so that the court may determine whether the stay should be continued. The conditions imposed on Defendants in the court's Order Granting Federal Defendants' Motion to Continue Plaintiff's Motion for Preliminary Injunction remain in effect during the stay.

IT IS SO ORDERED.