# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3910

_____

Sierra Club,

      Plaintiff - Appellant,

v.

United States Army Corps of
Engineers; Federal Emergency
Management Agency; et al.,

      Defendants - Appellees.

\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.

_____

Submitted: October 14, 2005
Filed: April 4, 2006

_____

Before LOKEN, Chief Judge, LAY and BENTON, Circuit Judges.

_____

LOKEN, Chief Judge.

Responding to a request by Jefferson City, Missouri, the U.S. Army Corps of Engineers ("the Corps") proposes to construct a levee, known as L-142, to reduce the risk of future flooding along the banks of the Missouri River as it flows through Jefferson City. The project will include land previously acquired by Jefferson City under the Stafford Act, 42 U.S.C. §§ 5121 *et seq.* Sierra Club filed this action alleging that the Corps violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4331 *et seq.*, by not preparing an environmental impact statement, and that the

Federal Emergency Management Agency ("FEMA") violated the Stafford Act by permitting the levee to include land that is restricted to open space uses.

On the government's motion, the district court dismissed these claims for lack of jurisdiction, concluding that judicial review under the Administrative Procedure Act is barred by the lack of "final agency action," see 5 U.S.C. § 704, and that Sierra Club lacks standing because it has not shown sufficiently certain injury. Sierra Club appeals. We agree that Sierra Club did not establish a final agency action with respect to the Stafford Act claim, but we conclude that the Corps' issuance of an environmental assessment and a finding of no significant impact did constitute final agency action under NEPA, and that Sierra Club has standing. Accordingly, we reverse the district court's dismissal of the NEPA claims.

## I.

Following extensive flooding in the Midwest in 1993, Congress amended the Stafford Act to minimize the cost of future floods by authorizing FEMA to assist local governments in acquiring property in flood-prone areas. To obtain assistance under this hazard mitigation grant program ("HMGP"), an applicant must agree that:

> (ii) no new structure will be erected on property acquired, accepted or from which a structure was removed under the acquisition or relocation program other than -
> (I) a public facility that is open on all sides and functionally related to a designated open space;
> (II) a rest room; or
> (III) *a structure that the [FEMA] Director approves in writing before the commencement of the construction of the structure*.

42 U.S.C. § 5170c(b)(2)(B)(ii) (emphasis added). In 1994, Jefferson City applied for and received HMGP funding to acquire residential and commercial properties in the

-2-

Cedar City area seriously damaged by the 1993 floods. Deeds to those properties contain covenants restricting their future use to uses consistent with the above-quoted statute. See 44 C.F.R. § 206.434(e)(1).

By early 1998, FEMA had adopted a policy that large flood control structures such as levees are not compatible with the non-structural emphasis of the HMGP program and therefore FEMA "will not grant an exception [under 42 U.S.C. § 5170c(b)(2)(B)(ii)(III)] for such activities." On March 29, 2000, FEMA and the Corps signed a Memorandum of Agreement. The agencies agreed "that the construction of flood damage reduction levees on HMGP lands is incompatible with open space uses" but identified fourteen projects, including the proposed L-142 levee in Jefferson City, in which local governments were pursuing the construction of levees on lands previously acquired under the HMGP. The agencies agreed to conduct "an expeditious joint review on a case-by-case basis to determine if any of the identified levees may proceed" based on a determination "that there reasonably is no [other] land . . . on which levee construction is technically feasible, economically justified, and environmentally acceptable."

On April 26, 2001, the Corps issued an environmental assessment ("EA") for a proposed L-142 levee that would include 30.22 acres of deed-restricted land acquired with HMGP funds, 1.47 acres under the levee footprint, and 28.75 acres inside the levee. The Corps also issued a finding of no significant impact ("FONSI") in lieu of an environmental impact statement. See 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.4. Construction of the L-142 levee has not begun.

Sierra Club filed this suit in December 2003 alleging that the Corps violated NEPA and the APA by failing to adequately evaluate the environmental impacts of the project and by issuing a FONSI rather than an environmental impact statement. Sierra Club filed an amended complaint in February 2004 adding FEMA as a defendant and alleging that its Memorandum of Agreement with the Corps and

approval of a levee including 30.22 acres of deed-restricted land were arbitrary and capricious agency actions within the meaning of the APA. See 5 U.S.C. § 706(2)(A).

The government moved to dismiss all claims for lack of jurisdiction, raising three inter-related issues. First, the government argued there is no final agency action by the Corps because it has not entered into a Project Cooperation Agreement with Jefferson City nor received necessary funding from Congress, and no final agency action by FEMA because it has not entered into an Agreement of Clarification with Jefferson City needed to modify the deed restrictions on HMGP-acquired properties. Second, the government argued that the claims are not ripe because the project's future is uncertain and no construction work may begin until the Corps and FEMA take these additional actions. Third, the government argued that Sierra Club lacks standing because its alleged injury in fact is neither actual nor imminent.

The district court dismissed the amended complaint for lack of jurisdiction, concluding there has been no "final agency action" within the meaning of 5 U.S.C. § 704 and Sierra Club lacks standing because it has suffered no actual injury. The court did not address ripeness. On appeal, Sierra Club argues FEMA's approval of the L-142 levee was a final agency action, the EA and FONSI issued by the Corps was a final agency action, Sierra Club has standing to sue on behalf of its members, and the dispute is ripe for judicial review. We review *de novo* the district court's dismissal of a complaint for lack of subject matter jurisdiction. See In re Sac & Fox Tribe of the Miss. in Iowa/Meskwaki Casino Lit., 340 F.3d 749, 755 (8th Cir. 2003).

## II. Final Agency Action

Neither the Stafford Act, NEPA, nor the statutes governing the Corps expressly provide for judicial review of the agency actions at issue. Therefore, jurisdiction is limited to judicial review under the APA, which provides for review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Two

conditions must be satisfied for an agency action to be final.  "First, the action must mark the consummation of the agency's decisionmaking process -- it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (quotations and citations omitted).  A broad agency program is not a final agency action within the meaning of 5 U.S.C. § 704. Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 890-94 (1990).  Nor is an agency report that "serves more like a tentative recommendation than a final and binding determination."  Franklin v. Massachusetts, 505 U.S. 788, 798 (1992).  But if the agency has issued "a definitive statement of its position, determining the rights and obligations of the parties," that action is final for purposes of judicial review despite the "possibility of further proceedings in the agency" to resolve subsidiary issues.  Bell v. New Jersey, 461 U.S. 773,779-80 (1983).

**A.  The Stafford Act Claim.**  For its claim against FEMA, Sierra Club first alleged that the agency's March 2000 Memorandum of Agreement with the Corps permitting flood levees to be built on certain HMGP-acquired lands was an arbitrary and capricious application of 42 U.S.C. § 5170c(b)(2)(B)(ii)(III).[1]  We agree with the government and the district court that the Memorandum of Agreement was not a final agency action.  It merely identified sites that *might* justify building levees on HMGP-acquired properties and prescribed an interagency protocol for determining whether a specific site such as the L-142 levee in Jefferson City warranted this exception to FEMA's normal policy.  The Memorandum did not obligate either agency to permit levee construction.  It is an example of a tentative or interlocutory agency action which determines no substantive rights or obligations within the meaning of Bennett

_____

[1]We have found no reported case interpreting 42 U.S.C. § 5170c, and the Stafford Act does not expressly provide for private rights of action.  This appeal raises only threshold jurisdictional issues.  Our discussion should not be read as expressing a view as to any other issue of law or fact.

v. Spear. Therefore, it is not subject to immediate judicial review under the "final agency action" provision of 5 U.S.C. § 704.

Sierra Club also alleged that FEMA's "determination to allow construction of the [L-142] levee on 30.22 acres of deed-restricted land" was an arbitrary and capricious agency action. Surprisingly, although the Memorandum of Agreement provided for an "expeditious joint review" to make such determinations "on a case-by-case basis," the record on appeal does not reveal how or when this specific determination was made. However, the record does include an April 12, 2000, letter from FEMA's Regional Director to his State of Missouri counterpart stating: (i) FEMA agrees with the Corps that there is no practicable alternative to building the L-142 levee on HMGP-acquired lands, (ii) Jefferson City has agreed to acquire 60.44 acres of flood-prone property as "an acceptable compensatory mitigation measure," and therefore (iii) FEMA "will provide an appropriate legal instrument to be signed by FEMA, the State of Missouri and the City of Jefferson City that will modify the open space restrictions and allow construction of the L-142 levee" impacting 30.22 acres of deed-restricted land. On appeal, Sierra Club argues that this determination "mark[s] the end of FEMA's decision-making" and is therefore a final agency action.

In support of its motion to dismiss, the government submitted an affidavit by the Acting Director of FEMA's Mitigation Division. The Acting Director first averred that a recipient of HMGP funds such as Jefferson City must apply for approval allowing a structure such as a levee to be built on HMGP-acquired lands, and FEMA's approval must be reflected in an "Agreement of Clarification." A Model Agreement of Clarification was attached to the affidavit. The Acting Director then averred that, although Jefferson City applied for approval in March 2000 and the April 2000 letter stated that FEMA "will provide an appropriate legal instrument," no Agreement of Clarification has been signed and no deeds have been amended. "Furthermore," the affidavit concluded, "given the amount of time that has lapsed . . . FEMA would require the City to resubmit their request to allow the construction of the levee on

HMGP lands." Acknowledging that finality is a pragmatic and flexible concept, the government argues there is no final agency action under the Stafford Act until FEMA takes these additional steps.

Jurisdictional issues such as standing and ripeness are determined at the time the lawsuit was filed in December 2003. See McClain v. Am. Econ. Ins. Co., 424 F.3d 728, 733 (8th Cir. 2005). Therefore, we put aside as irrelevant the averment that FEMA would start the approval process over because time has now passed without construction of the L-142 levee. We are also inclined to disregard what may be the final step in the Stafford Act process, the modification of individual deeds to HMGP-acquired lands. The government has not established that deed modifications will be required, though real property filings will doubtless be prudent, if not required. But once FEMA has given the overall approval required by 42 U.S.C. § 5170c(b)(2)(B)(ii)(III), this step strikes us as ministerial, like the method of repayment issue that did not render a deficiency determination non-final in Bell, 461 U.S. at 779.

The difficult question in this case is whether the specific FEMA determination described in the April 2000 letter was a final agency action before Jefferson City and FEMA entered into an Agreement of Clarification. The April 2000 letter appears to satisfy the first requirement of Bennett v. Spear; it reflects a final FEMA determination to approve a specific levee proposal. But to be a final agency action, this determination must be one that determines rights or obligations or from which legal consequences will flow. Neither party analyzed this issue in detail, as the Supreme Court's precedents require, and the sparse record on appeal sheds inadequate light on an agency process that is not carefully prescribed by statute or regulation. One factor seems certain -- significant agency action remains before the L-142 levee may be constructed, which strongly suggests the Stafford Act issue is not ripe because "to withhold court consideration at present will not cause the parties significant hardship." Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733 (1998). Sierra Club

as the party invoking federal jurisdiction has the burden of proof.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  Accordingly, we affirm the district court's resolution of this issue.

**B. The NEPA Claims.**  Sierra Club argues that the Corps' issuance of an EA and a FONSI was a "final agency action."  The government responds that an EA and a FONSI are not a final agency action when, as here, "the federal agencies must take several more actions before their decision is final and [the major federal action] contemplated in the NEPA compliance documents could begin."  The district court did not specifically address this issue.[2]

NEPA prescribes a set of "action-forcing" measures that require federal agencies to take a "hard look" at the environmental consequences of major federal actions before they are taken.  See 42 U.S.C. § 4332; Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 348-49 (1989).  NEPA's obligations are procedural; the statute does not mandate any particular result.  See Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, 462 U.S. 87, 97 (1983).  If an agency's preliminary environmental assessment of a project suggests that no significant environmental impact is likely, the agency issues a FONSI.  See 40 C.F.R. §§ 1508.9, .13.  If significant environmental impact is likely, an environmental impact statement is required.  See 42 U.S.C. § 4332(2)(C).  Sierra Club alleges that the Corps violated NEPA because its EA overlooked the cumulative and secondary effects of the proposed L-142 levee and because an environmental impact statement rather than a FONSI is required.

---

[2]In discussing the lack of final agency action, the district court's opinion stated that the Corps did not violate NEPA by failing to issue an environmental impact statement because its EA and FONSI were sufficient.  The government on appeal properly notes that its motion to dismiss did not address the merits of this issue and therefore it should be remanded if we conclude the district court has jurisdiction.

The Supreme Court has strongly signaled that an agency's decision to issue either a FONSI or an environmental impact statement is a "final agency action" permitting immediate judicial review under NEPA:

> NEPA . . . simply guarantees a particular procedure, not a particular result. . . . Hence a person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper.

Ohio Forestry, 523 U.S. at 737 (citations omitted); cf. Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 370-74 (1989). More than one of our sister circuits have held that the six-year statute of limitations for commencing a NEPA action under the APA begins to run when the agency issues a FONSI. See Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 188 (4th Cir. 1999); Southwest Williamson County Cmty Ass'n v. Slater, 173 F.3d 1033, 1036 (6th Cir. 1999).

To be sure, "plaintiffs in NEPA cases must point to 'action' at least arguably triggering the agency's obligation to prepare an impact statement." Found. on Econ. Trends v. Lyng, 943 F.2d 79, 85 (D.C. Cir. 1991). Here, the action is the proposal to build a specific levee. The Corps' decision to issue a FONSI was the culmination of the agency's NEPA decision-making. To deny judicial review of the agency's NEPA compliance because additional steps are required before the levee can be built would undermine the purpose of judicial review under NEPA -- to "ensure that important effects will not be overlooked or underestimated only to be discovered after resources have been committed or the die otherwise cast." Robertson, 490 U.S. at 349.[3] For

_____

[3]We conclude the government's contention that there is no final agency action until Congress appropriates the necessary funds is without merit. "[I]t is more pragmatic to review Corps' action at the end of the agency's decision-making process than after Congress has appropriated funds." Oregon Natural Res. Council v. Harrell, 52 F.3d 1499, 1503 (9th Cir. 1995); accord Town of Rye v. Skinner, 907 F.2d 23, 24 (2d Cir. 1990), cert. denied, 498 U.S. 1024 (1991).

these reasons, we conclude that the Corps' decision to issue a FONSI constituted a "final agency action" under NEPA that is subject to immediate judicial review under 5 U.S.C. § 704.

### III. Standing and Ripeness under NEPA

We likewise reject the district court's conclusion that Sierra Club lacks standing because no injury is certain to occur until the Corps and FEMA take additional steps to finalize the levee project. Injury under NEPA occurs when an agency fails to comply with that statute, for example, by failing to issue a required environmental impact statement. The injury-in-fact is increased risk of environmental harm stemming from the agency's allegedly uninformed decision-making. See Comm. to Save the Rio Hondo v. Lucero, 102 F.3d 445, 448-49 (10th Cir. 1996). The government does not challenge Sierra Club's standing to assert that injury on behalf of its members. See Defenders of Wildlife, 504 U.S. at 572 n.7 (1992).

Finally, we have little difficulty concluding that this NEPA dispute was ripe for judicial review when the lawsuit was filed in December 2003. See Ohio Forestry, 523 U.S. at 737. However, that does not mean the district court must ignore the current posture of the dispute. An agency must continue to take a "hard look" at the environmental effects of a planned action after preliminary approval and may need to prepare a supplemental assessment or impact statement if environmentally significant new circumstances or information develop, and if as in this case major federal action is yet to occur. See Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 72 (2004); Marsh, 490 U.S. at 372-74.

Substantial time has elapsed since FEMA approved the L-142 levee in April 2000 and the Corps issued a FONSI in April 2001. Both agencies have identified additional steps that must be taken before the levee may be built, steps that may require a new approval process before FEMA and may trigger supplemental

-10-

environmental analysis by the Corps, or by Jefferson City, <u>see</u> 33 U.S.C. § 701b-13(d)(1)(B). A district court has broad discretion to stay proceedings when appropriate to control its docket, <u>Clinton v. Jones</u>, 520 U.S. 681, 706 ( 1997), including the discretion to stay judicial review under NEPA based upon ripeness considerations that do not deprive the court of jurisdiction. <u>See</u> <u>Malama Makua v. Rumsfeld</u>, 136 F. Supp. 2d 1155, 1165 (D. Haw. 2001). We leave these questions for further development by the parties and the district court on remand.

The judgment of the district court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

_____